**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| **DISH WIRELESS L.L.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **TOWN OF PALM BEACH SHORES, a** | ) | |
| **Florida Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT FOR EQUITABLE RELIEF, INJUNCTIVE RELIEF, DECLARATORY
JUDGMENT, AND REQUEST FOR EXPEDITED REVIEW**

Plaintiff, DISH WIRELESS L.L.C. ("DISH"), files this complaint for Injunctive Relief, Declaratory Judgment, and Request for Expedited Review against Defendant, the TOWN OF PALM BEACH SHORES (the "Town"), and states as follows:

## I.   INTRODUCTION.

1.     This action arises out of the unlawful denial of DISH's application to modify an existing wireless facility (an existing base station) located on real property in Palm Beach Shores, Florida.

2.     Federal law enacted by Congress and implemented by the Federal Communications Commission ("FCC") promotes the development of an effective and dynamic national telecommunications network. In furtherance of that goal, Section 6409 of the Spectrum Act, enacted in 2012, provides in relevant part that a "local government may not deny, and shall approve, any eligible facilities request for a modification of an existing wireless base station that does not substantially change the physical dimensions of such base station." 47 U.S.C. § 1455(a) ("Section 6409").

3.      Section 6409 requires the Town to approve DISH's request to collocate new wireless transmission equipment on a long-existing base station located on the roof of the Mayan Towers, 125 Ocean Avenue, Palm Beach Shores, Florida 33404 (the "Mayan Towers"). Contrary to federal law, in a letter dated February 27, 2023, the Town claimed DISH's request to collocate DISH's wireless transmission equipment did not qualify as an eligible facilities request under Section 6409.

4.      The Town's denial of DISH's application violates Section 6409, the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) (the "TCA"), and Fla. Stats. §§ 365.172(13)(d)(2) and (3).

5.      The Town also unreasonably discriminated against DISH by denying DISH's application and subjecting it to a more rigorous and stringent application process than that to which other wireless providers' requests to collocate similar equipment on the Mayan Towers have been subjected. In particular, the Town has routinely reviewed and approved the requests made by other providers to modify and collocate on the existing base station at the Mayan Towers since at least 1995.

6.      Lastly, the Town has also violated federal and Florida law by failing to approve or deny DISH's within the required time.

7.      DISH brings this action to require the Town to comply with its obligations under federal and state law to permit DISH to collocate its equipment on a long-existing wireless facility, even as the Town has allowed and continues to allow other wireless carriers to do so.

8.      DISH is entitled to an order directing the Town to grant DISH's application and all permits necessary for the collocation of DISH transmission equipment, or in the alternative, an order deeming the application granted as a matter of law and estopping the Town from taking any

action to prevent DISH from installing all transmission equipment necessary for the collocating of DISH's transmission equipment and operating its equipment on the Mayan Towers.

9.      DISH requests expedited treatment of this Complaint pursuant to Section 6409, the rules adopted by the FCC in *Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies, Report and Order*, 29 FCC Rcd 12865, ¶ 236 (2014) ("2014 Infrastructure Order"), 47 U.S.C. § 332(c)(7)(B)(v), and Fla. Stat. Ann. § 365.172(13)(g).

## II.      **THE PARTIES**.

10.      DISH is a Colorado limited liability company with a principal address in Englewood, Colorado and is qualified to do business in Florida.

11.      The Town is a Florida Municipal Corporation established, organized, and existing under the laws of the State of Florida and subject to the jurisdiction of this Court.

## III.      **JURISDICTION AND VENUE**.

12.      This Court has jurisdiction over this matter pursuant to: 28 U.S.C. § 1331 (federal question), the TCA, 47 U.S.C. § 332(c)(7)(B)(v), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

13.      This is also an action for declaratory relief pursuant to Chapter 86, Florida Statues. This Court has jurisdiction pursuant to 28 U.S.C. § 1367.

14.      Venue is proper in this Court pursuant to 47 U.S.C. § 332(c)(7)(B)(v) and 28 U.S.C. § 1391(b)(2) because Defendants are located in this judicial district, the existing wireless communications facility is located in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## IV.   STATUTORY AND REGULATORY BACKGROUND.

### A.   Section 6409.

15.   The purpose of the TCA is to "make available, so far as possible, to all the people of the United States . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communications service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

16.   Consistent with these policies, Congress and the FCC have sought to eliminate barriers and streamline the regulatory review process to facilitate deployment and modification of wireless communications infrastructure necessary for the efficient creation of new and upgraded wireless networks.

17.   In 2012, Congress enacted Section 6409 of the Spectrum Act; under Section 6409(a) of the Spectrum Act, "a State or **local government may not deny**, and shall approve any **eligible facilities request** for a **modification** of an existing tower or **base station** that **does not substantially change the physical dimensions** of such tower or **base station**." 47 U.S.C. § 1455(a)(emphasis added).

18.   Terms used in Section 6409 are defined as following:[1]

    a.    An "eligible facilities request" is "any request for modification of . . . [a] base station that does not substantially change the physical dimensions of the . . . base station, involving (i) Collocation[2] of new transmission equipment; (ii) Removal of transmission equipment; or (iii) Replacement of transmission equipment. 47 C.F.R. § 1.6100(b)(3); 47 U.S.C. § 1455(a)(2).

---

[1] The regulatory provisions related to towers were omitted because this is a rooftop structure qualifying as a "base station" or other "eligible support structure."

[2] "Collocation" means "[t]he mounting or installation of transmission equipment on [a base station] for the purpose of transmitting and/or receiving radio frequency signals for communications purposes. 47 C.F.R. § 1.6100(b)(2).

4

b.    "Existing" means, a constructed base station that "has been reviewed and approved under the applicable zoning or siting process, or under another State or local regulatory review process." 47 C.F.R. 1.6100(b)(5).

c.    "Base station" means "[a] structure or equipment at a fixed location that enables Commission-licensed or authorized wireless communications between user equipment and a communications network." 47 C.F.R. 1.6100(b)(1). Base station does not encompass a tower. *Id.*

d.    "Eligible support structure" means [a]ny . . . base station as defined in this section, provided that it is existing at the time the relevant application is filed with the State or local government under this section. 47 C.F.R. 1.6100(b)(4).

e.    "Transmission equipment" means "[e]quipment that facilitates transmission for any Commission-licensed or authorized wireless communication service, including, but not limited to, radio transceivers, antennas, coaxial or fiber-optic cable, and regular and backup power supply." 47 C.F.R. 1.6100(b)(8). "The term includes equipment associated with wireless communications services including, but not limited to, private, broadcast, and public safety services, as well as unlicensed wireless services and fixed wireless services such as microwave backhaul." *Id.*

19.    Pursuant to 47 C.F.R § 1.6100(b)(7), a modification only substantially changes the physical dimensions of an eligible support structure if it meets any of the following criteria:

i.    For towers . . . ; for other eligible support structures, it increases the height of the structure by more than 10% or more than ten feet, whichever is greater;

ii.    For towers . . .; for other eligible support structures, "it involves adding an appurtenance to the body of the structure that would protrude from the edge of the structure by more than six feet;

iii.    For any eligible support structure, it involves installation of more than the standard number of new equipment cabinets for the technology involved, but not to exceed four cabinets; or, for towers in the public rights-of-way and base stations, it involves installation of any new equipment cabinets on the ground if there are no pre-existing ground cabinets associated with the structure, or else involves installation of ground cabinets that are more than 10% larger in height or overall volume than any other ground cabinets associated with the structure;

iv.    It entails any excavation or deployment outside the current site;

      v.       It would defeat the concealment elements of the eligible support structure; or

      vi.     It does not comply with conditions associated with the siting approval of the construction or modification of the eligible support structure or base station equipment, provided however that this limitation does not apply to any modification that is non-compliant only in a manner that would not exceed the thresholds identified in §1.40001(b)(7)(i) through (iv).

47 C.F.R. § 1.6100(b)(7)(i)–(vi).

     20.     In 2014, the FCC adopted rules implementing Section 6409(a). Infrastructure Order ¶¶ 135-242.[3] In adopting the rules, the FCC explained that the rules "should help spur wireless broadband development, in part, by facilitating the sharing of infrastructure that already supports wireless communications." *Id.* at ¶ 5. The FCC's 2014 Infrastructure Order explained that "[p]romoting shared use in this manner advances several important policy goals while creating little or no potential for competitive harm and, indeed, promoting opportunities for increased competition." *Id.*

     21.     Federal law, as explained by the 2014 Infrastructure Order, requires that a State or local government approve an eligible facilities request within sixty days from the date that an applicant submits its request if the application is covered by Section 6409. 2014 Infrastructure Order at ¶¶ 15, 21, 135, 137, 212, 227; 47 U.S.C. § 1455(a); 47 C.F.R. § 1.6100(c)(2). In particular, the FCC explained the following:

> Our reading of Section 6409(a) supports this approach. The provision states without equivocation that the reviewing authority "may not deny, and shall approve" any qualifying application. **This directive leaves no room for a lengthy and discretionary approach to reviewing an application that meets the statutory criteria; once the application meets these criteria, the law forbids the State or local government from denying it**.

2014 Infrastructure Order at ¶ 227(emphasis added).

---

[3] The rules issued in the 2014 Infrastructure Order were affirmed on appeal in *Montgomery County v. FCC*, 811 F.3d 121 (4th Cir. 2015).

22.     In a June 2020 Declaratory Ruling, the FCC further clarified how applications made pursuant to Section 6409 should be processed, stating that the 60-day "shot clock" begins to run "when an applicant takes the first procedural step in a locality's application process and submits written documentation showing that proposed modification is an eligible facilities request." *Implementation of State and Local Governments' Obligation to Approve Certain Wireless Facility Modification Requests Under Section 6409(a) of the Spectrum Act of 2012, Declaratory Ruling and Notice of Proposed Rulemaking*, 35 FCC Rcd 5977, ¶ 12 (2020) ("2020 Declaratory Ruling").

23.     The FCC provided the June 2020 Declaratory Ruling in order "provide greater certainty to applicants for State and local government approval of wireless facility modifications, as well as to the reviewing government agencies, and **these interpretations should accelerate the deployment of advanced wireless networks**." *Id.* at ¶ 11(emphasis added).

24.     In the 2020 Declaratory Ruling, the FCC also clarified that State and local reviewing authorities may not delay the commencement of the 60-day review timeline by (1) establishing a "first step" that is outside an applicant's control; (2) defining a "first step" that is a combination or sequence of steps rather than a single action; or (3) refusing to accept an applicant's submission intended to satisfy the written eligible facilities request requirement. *Id.* at ¶¶ 18–22.

25.     "When an applicant asserts in writing that a request for modification is covered by this section [6409], a State or local government may require the applicant to provide documentation or information only to the extent reasonably related to determining whether the request meets the requirements of this section." 47 C.F.R. § 1.6100(c)(1). "A State or local government **may not** require an applicant to submit **any other documentation**, including but not limited to documentation intended to illustrate the need for such wireless facilities or to justify the business decision to modify such wireless facilities." *Id.* (emphasis added).

26.     Although the 60-day review period commences when the application is filed, the shot clock may <u>only</u> be tolled by either mutual agreement or in cases where the reviewing authority determines that the application is incomplete. 47 C.F.R. § 1.6100(c)(3).

27.     "To toll the timeframe for incompleteness, the reviewing State or local government must provide written notice to the applicant within 30 days of receipt of the application." 47 C.F.R. § 1.6100(c)(3)(i). The notice must "clearly and specifically delineat[e] all missing documents or information." *Id.* A reviewing authority may only toll the shot clock for missing information that is required to be submitted in order to comply with 47 CFR § 1.6100(c)(1). *Id.*

**B.     <u>The TCA.</u>**

28.     The TCA states, in pertinent part:

(i)     The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof

(I)     **shall not unreasonably discriminate among providers of functionally equivalent services;** and

(II)    shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii)    A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii)   **Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record**.

47 U.S.C.A. § 332(c)(7)(B)(i)-(iii).

C.    **Florida Law Requires Determination on Application in 90 business days**.

29.    The State of Florida has also enacted a statute to streamline the application process for siting wireless facilities in order "[t]o balance the public need for reliable E911 services through reliable wireless systems and the public interest served by governmental zoning and land development regulations and notwithstanding any other law or local ordinance to the contrary, the following standards shall apply to a local government's actions, as a regulatory body, in the regulation of the placement, construction, or modification of a wireless communications facility." Fla. Stat. Ann. § 365.172(13).

30.    "Collocation among wireless providers is encouraged by the state." Fla. Stat. Ann. § 365.172(13)(a). "Collocation means the situation when a second or subsequent wireless provider uses an existing structure to locate a second or subsequent antennae." § 365.172(3)(f).

31.    "Local governments may not require wireless providers to provide evidence of a wireless communications facility's compliance with federal regulations, except evidence of compliance with applicable Federal Aviation Administration requirements under 14 C.F.R. part 77, as amended, and evidence of proper Federal Communications Commission licensure, or other evidence of Federal Communications Commission authorized spectrum use, but may request the Federal Communications Commission to provide information as to a wireless provider's compliance with federal regulations, as authorized by federal law." Fla. Stat. Ann. § 365.172(13)(c).

32.    Regarding an application for collocation, Fla. Stats. § 365.172(13)(d)(2) and (3) provide as follows

> **A local government shall grant or deny each properly completed application for any other wireless communications facility** based on the application's compliance with the local government's applicable regulations, including but not limited to land development regulations, consistent with this subsection and within the normal timeframe for a similar type review **but in no case later than 90**

**business days after the date the application is determined to be properly completed in accordance with this paragraph.**

3. a. An application is deemed submitted or resubmitted on the date the application is received by the local government. **If the local government does not notify the applicant in writing that the application is not completed in compliance with the local government's regulations within 20 business days after the date the application is initially submitted or additional information resubmitted, the application is deemed, for administrative purposes only, to be properly completed and properly submitted**. However, the determination shall not be deemed as an approval of the application. If the application is not completed in compliance with the local government's regulations, the local government shall so notify the applicant in writing and the notification must indicate with specificity any deficiencies in the required documents or deficiencies in the content of the required documents which, if cured, make the application properly completed. Upon resubmission of information to cure the stated deficiencies, the local government shall notify the applicant, in writing, within the normal timeframes of review, but in no case longer than 20 business days after the additional information is submitted, of any remaining deficiencies that must be cured. Deficiencies in document type or content not specified by the local government do not make the application incomplete. Notwithstanding this sub-subparagraph, if a specified deficiency is not properly cured when the applicant resubmits its application to comply with the notice of deficiencies, the local government may continue to request the information until such time as the specified deficiency is cured. The local government may establish reasonable timeframes within which the required information to cure the application deficiency is to be provided or the application will be considered withdrawn or closed.

b. **If the local government fails to grant or deny a properly completed application for a wireless communications facility within the timeframes set forth in this paragraph, the application shall be deemed automatically approved and the applicant may proceed with placement of the facilities without interference or penalty**. The timeframes specified in subparagraph 2. may be extended only to the extent that the application has not been granted or denied because the local government's procedures generally applicable to all other similar types of applications require action by the governing body and such action has not taken place within the timeframes specified in subparagraph 2. Under such circumstances, the local government must act to either grant or deny the application at its next regularly scheduled meeting or, otherwise, the application is deemed to be automatically approved.

Fla. Stat. Ann. § 365.172(13)(d)(2)-(3)(emphasis added).

E.      **Remedies.**

33.     "Applicants and reviewing authorities may bring claims related to Section 6409(a) to any court of competent jurisdiction."   47 C.F.R. § 1.6100(c)(5) (defining the available remedies).

34.     In the 2014 Infrastructure Order, the FCC outlined the claims the parties may bring expeditiously related to Section 6409 in a court of competent jurisdiction, explaining the following:

> **First, if the State or local authority has denied the application, an applicant might seek to challenge that denial**. Second, if an applicant invokes its deemed grant right after the requisite period of State or local authority inaction, that reviewing authority might seek to challenge the deemed grant. Third, an applicant whose application has been deemed granted might seek some form of judicial imprimatur for the grant by filing a request for declaratory judgment or other relief that a court may find appropriate. **In light of the policy underlying Section 6409(a) to ensure that covered requests are granted promptly, and in the self-interest of the affected parties, we would expect that these parties would seek judicial review of any such claims relating to Section 6409(a) expeditiously**. The enforcement of such claims is a matter appropriately left to such courts of competent jurisdiction. **However, given the foregoing Federal interest reflected in Section 6409(a), it would appear that the basis for equitable judicial remedies would diminish significantly absent prompt action by the aggrieved party**. **In our judgment, based on the record established in this proceeding, we find no reason why (absent a tolling agreement by parties seeking to resolve their differences) such claims cannot and should not be brought within 30 days of the date of the relevant event (i.e., the date of the denial of the application or the date of the notification by the applicant to the State or local authority of a deemed grant in accordance with our rules).**

2014 Infrastructure Order at ¶ 236 (emphasis added); 47 C.F.R. § 1.6100(c)(5).

35.     The Infrastructure Order also provided guidance that in some instances Section 6409(a) and Section 332(c)(7) both apply. The FCC explained:

> Some additional clarification of time periods and deadlines will assist in cases where both Section 6409(a) and Section 332(c)(7) apply. **In particular, we note that States and municipalities reviewing an application under Section 6409(a) will be limited to a restricted application record tailored to the requirements of that provision**. As a result, the application may be complete for purposes of Section 6409(a) review but may not include all of the information the State or

municipality requires to assess applications not subject to Section 6409(a). **In such cases, if the reviewing State or municipality finds that Section 6409(a) does not apply (because, for example, it proposes a substantial change), we provide that the presumptively reasonable timeframe under Section 332(c)(7) will start to run from the issuance of the State's or municipality's decision that Section 6409(a) does not apply.** To the extent the State or municipality needs additional information at that point to assess the application under Section 332(c)(7), it may seek additional information subject to the same limitations applicable to other Section 332(c)(7) reviews, as discussed below. We recognize that, in such cases, there might be greater delay in the process than if the State or municipality had been permitted to request the broader documentation in the first place. We find, however, that applicants are in a position to judge whether to seek approval under Section 6409(a), and we expect they will have strong incentives to do so in a reasonable manner to avoid unnecessary delays. **Finally, as we proposed in the Infrastructure NPRM,[4] we find that where both Section 6409(a) and Section 332(c)(7) apply, Section 6409(a) governs, consistent with the express language of Section 6409(a) providing for approval "[n]otwithstanding" Section 332(c)(7) and with** canons of statutory construction that a more recent statute takes precedence over an earlier one and that "normally the specific governs the general."

2014 Infrastructure Order at ¶ 220(emphasis added).

36.     The TCA provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [the TCA] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

37.     Appeals under Section 332(c)(7)(B)(v) are to be heard and adjudicated on an expedited basis. *BellSouth Mobility Inc. v. Gwinnett County,* 944 F. Supp. 923, 929 (N.D. Ga. 1996) (courts shall act expeditiously in deciding appeals brought under section 332(c)(7)(B)(v)).

---

[4] The "Infrastructure NPRM" referred to in the 2014 Infrastructure Order is the following matter: *Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies, Acceleration of Broadband Deployment: Expanding the Reach and Reducing the Cost of Broadband Deployment by Improving Policies Regarding Public Rights of Way and Wireless Facilities Siting, Amendment of Parts 1 and 17 of the Commission's Rules Regarding Public Notice Procedures for Processing Antenna Structure Registration Applications for Certain Temporary Towers,* 2012 Biennial Review of Telecommunications Regulations, WT Docket Nos. 13-238, 13-32, WC Docket No. 11-59, *Notice of Proposed Rulemaking,* 28 FCC Rcd 14238, 14240, 14304-17 App. B (2013).  2014 Infrastructure Order at ¶ 9, n.15.

38.     Similarly, under Florida law, "[i]f any person adversely affected by any action, or failure to act, or regulation, or requirement of a local government in the review or regulation of the wireless communication facilities files an appeal or brings an appropriate action in a court or venue of competent jurisdiction, following the exhaustion of all administrative remedies, the matter shall be considered on an expedited basis." Fla. Stat. Ann. § 365.172(13)(g).

39.     An injunction ordering issuance of a permit is an appropriate remedy for violation of the TCA. *Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210, 1222 (11th Cir. 2002).

## V.     FACTS.

### A.     Background of Existing Base Station at the Mayan Towers.

40.     This case involves an eligible facilities request for the collocation of new transmission equipment at the Mayan Towers.

41.     The Mayan Towers is a base station under Section 6409 because, according to documents produced by the Town, since 1995 the Mayan Towers has been and continues to be a structure at a fixed location that enables FCC-licensed or authorized wireless communications between user equipment and a communications network. 47 C.F.R. § 1.6100(b)(1).

42.     Since 1995 (until and even after DISH's application), the Town has routinely reviewed and approved modification of the base station, by permitting the collocation of new transmission equipment, the removal of transmission equipment, and the replacement of transmission equipment located on the Mayan Towers by numerous wireless carriers, including, but not limited to the following:

      a.     On or around November 7, 1995, the Town approved a building permit to modify, install, replace, and/or remove transmission equipment (Building Permit #5215).

b.      On November 14, 1995, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment (Building Permit 5244E).

c.      On December 12, 1997, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for Omnipoint** (Building Permit #6070).

d.      On January 28, 1998, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for Omnipoint** (Building Permit #6104).

e.      On May 6, 1999, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment (Building Permit #6478).

f.      On May 10, 1999, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment (Building Permit #6495).

g.      On August 6, 1999, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for AT&T** (Building Permit 6539).

h.      On May 14, 2007, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for T-Mobile** (Building Permit #8433).

i.       On January 4, 2008, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for T-Mobile** (Building Permit #8624).

j.       On January 23, 2008, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment for **T-Mobile** (Building Permit #8655).

k.       On January 27, 2012, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for Verizon** (Building Permit #9784).

l.       On May 25, 2012, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for Sprint** (Building Permit #9909).

m.       On July 12, 2012, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment for **T-Mobile** (Building Permit #9968).

n.       On September 30, 2013, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for Verizon** (Building Permit #10356).

o.       On July 1, 2014, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for Sprint** (Building Permit #10586 and 10587).

p.      On September 22, 2014, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for Sprint** (Building Permit #10662).

q.      On April 18, 2017, the Town reviewed and approved an electrical permit to modify, install, replace, and/or remove transmission equipment **for Verizon** (Building Permit #17PBS-11391-ELEC).

r.      On June 28, 2018, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for Verizon** (Building Permit #18PBS-11772-BLDG).

s.      On May 21, 2021, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for T-Mobile** (Building Permit #2021-249).

t.      On or around January 13, 2021, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment for **T-Mobile** (Building Permit #2021-13).

u.      On or around April 12, 2021, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for Verizon** (Building Permit 2021-80).

v.      On or around October 8, 2021, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for T-Mobile** (Building Permit #2021-235).

w.    On or around June 1, 2022, the Town reviewed and approved a building permit to modify, install, replace, and/or remove transmission equipment **for T-Mobile** (Building Permit #2022-117).

43.    Since the Mayan Towers is a structure at a fixed location that enables Commission-licensed or authorized wireless communications between user equipment and a communications network that has been reviewed and approved under the applicable zoning or siting process, and as further evidenced by the Town's long history of reviewing and summarily approving the modification and collocation of communications equipment at the site, the Mayan Towers is unquestionably an existing base station (the "Existing Base Station").

**B.    DISH's Application and Town's Denial.**

44.    On December 28, 2021, DISH entered into a Site Lease Agreement to lease the rights to install, operate, maintain, and manage a telecommunication facility at the Mayan Towers.

45.    On or around May 10, 2022, DISH submitted an application (the "Application") to the Town for a permit to modify the Existing Base Station at the Mayan Towers, specifically the collocation of DISH's new transmission equipment (the "Transmission Equipment"). [The Application is attached hereto as **Exhibit A**.]

46.    The Transmission Equipment that DISH intends to install is described in the site plan included with the Application, e.g. three (3) panel antennas, three (3) antenna mounts, and related equipment.

47.    The Application complied with all of procedures, requirements, and standards required by Section 6409 and other applicable law.

48.    The Town assigned DISH's Application permit #2022-113.

49.     The Town's website (MyGovernmentOnline.org) indicates that the Town received the Application on May 21, 2022.

50.     The Town failed to notify DISH in writing that the Application was not complete, anything was missing from the application, or the application was deficient in any manner.

51.     Because the Town did not send the above referenced notice, the Application was deemed complete and properly submitted.

52.     The Town was required to grant or deny the Application no later than 60 days after submission pursuant to federal law and within 90 business days under Florida law.

53.     The Town failed to grant or deny the Application for wireless communication facility within the required time frames.

54.     As a result, the Application is deemed granted and DISH may proceed with placement of the facilities without interference or penalty.

55.     Without waiving the Application's deemed granted status due to the Town's failure to act within the time required by Florida and federal law, DISH continued to work with the Town in good faith on its Application by submitting a resubmittal that contained a request for a special exception on September 26, 2022 (the "Resubmittal"). [The Resubmittal is attached hereto as **Exhibit B.**]

56.     When the Town failed to deny or grant the Resubmittal, on January 9, 2023, DISH asserted in writing that the requested modification is covered by Section 6409 (the "EFR Notice"). [The EFR Notice is attached as hereto as **Exhibit C.**]

57.     On January 20, 2023, DISH resubmitted its application with a letter addressing questions raised by the Town regarding total rooftop coverage and an updated site plan revising

calculations concerning building height.  (the "January Resubmittal") [The January Resubmittal is attached as **Exhibit D.**]

58.     On February 27, 2023, the Town's outside counsel sent DISH a letter claiming that DISH's Application did not qualify as an eligible facilities request under Section 6409 (the "February 27 Letter"). [The February 27 Letter is attached hereto as **Exhibit E.**]

59.     The February 27 Letter, in pertinent part, states:

**The Town disagrees with your assertion that the above referenced application qualifies to be treated as an Eligible Facilities Request under the Act**. In order to be considered an Eligible Facilities Request and thereby invoke expedited "shot clock" review requirements, the application must not seek to make "substantial changes" to the tower or base station. Substantial Change is defined in the Act to include (among other things) a change that does not comply with conditions associated with the siting approval of the construction or modification of the eligible support structure or base station equipment.

**The proposed antennae and associated equipment contemplated by the application will, in conjunction with the existing antennae already on the Mayan Towers Condominium rooftop, exceed the maximum permitted amount of rooftop coverage by equipment which is limited to 5% of the roof area of the building**. Thus, the antennae and equipment contemplated by the application in its current form are not only prohibited by the Town Code due to rooftop coverage limitations, but also amount to a Substantial Change under the federal regulations.

For the sake of discussion, however, **even if the application qualified as an Eligible Facilities Request**, we disagree with your "Shot Clock" calculations that identify the Town's decision making deadline as March 10, 2023.

60.     Further, in the February 27 Letter, the Town provided no evidence that the Existing Base Station exceeded the maximum permitted amount of rooftop coverage. Instead, the Town made this assertion simply upon "information and belief."

61.     On March 17, 2023, DISH, through counsel, responded disagreeing with, among other things, the eligible facilities request determination and the Town's shot clock analysis.

Further, the letter constituted notice to the Town that DISH's Application was deemed granted as of March 10, 2023. [The March 17 Letter is attached as **Exhibit "F."**]

<u>**COUNT I**</u>
<u>**Violation of 47 U.S.C. § 1455(a) and 47 C.F.R § 1.6100**</u>

62.     DISH incorporates by reference the allegations set forth in Paragraphs 1-60 above as if set forth fully herein.

63.     Section 6409 states:

"[A] State or <u>local government may not deny</u>, and <u>shall approve</u> any <u>eligible facilities request</u> for a <u>modification</u> of an existing tower or <u>base station</u> that <u>does not substantially change the physical dimensions</u> of such tower or <u>base station</u>."

47 U.S.C. § 1455(a) (emphasis added).

64.     The FCC has implemented Section 6409 by promulgating regulations codified at 47 C.F.R. § 1.6100.

65.     The FCC provided guidance regarding its view of the law and regulations in the 2014 Infrastructure Order and 2020 Declaratory Ruling.

66.     As explained above in paragraphs 41-43, *supra*, the Mayan Towers is an existing base station.

67.     The Town has routinely reviewed and approved modification of the base station since 1995, and DISH's request complies with all conditions imposed by the Town for the placement of wireless equipment at the Mayan Towers.

68.     DISH's Application, which includes the Resubmittal, EFR Notice, and January Resubmittal, is an eligible facilities request for the modification of an existing base station that does not substantially change the physical dimensions of the base station.

69.     DISH's request did not violate a condition to the placement of prior wireless equipment.

20

70.     The Town was required under federal law to approve and not deny DISH's application to modify (without substantially changing) the Existing Base Station for the purposes of collocating new transmission equipment.

71.     The Town violated federal law by denying DISH's application to modify the Existing Base Station under Section 6409.

**Wherefore,** DISH respectfully requests that this Court:

a.     Hold an expedited hearing;

b.     Declare that Town violated federal law (47 U.S.C. § 1455(a) and 47 C.F.R § 1.6100) by denying DISH's Application to modify the Existing Base Station at the Mayan Towers;

c.     Declare the Town is mandated by federal law to approve the Application and issue all permits necessary to install all transmission equipment necessary to collocate DISH's transmission equipment and operate DISH's transmission equipment;

d.     Enter an order granting the Application and all approvals necessary to allow construction and operation of the proposed colocation of DISH equipment at the Mayan Towers;

e.     Issue an order deeming DISH's Application granted as a matter of law;

f.     Estopping the Town from imposing penalties or in any way preventing DISH from proceeding with DISH's Application to modify the long-Existing Base Station at the Mayan Towers; and

g.     Such further, other, or different relief as the Court deems appropriate under the circumstances.

21

<u>**COUNT II**</u>
**Violation of 47 U.S.C. § 332(c)(7)(B)(i)(I)**
**(Discrimination)**

72.    DISH incorporates by reference the allegations set forth in Paragraphs 1-60 above as if set forth fully herein.

73.    The TCA states, in pertinent part, that state and local government regulation of personal wireless service facilities shall not unreasonably discriminate among providers of functionally equivalent services. 47 U.S.C. § 332(c)(7)(B)(i)(I).

74.    The Town was required under federal law not to unreasonably discriminate among providers of functionally equivalent services.

75.    The Town has unreasonably discriminated among providers of functional equivalent services by failing to approve DISH's request to collocate its wireless antennas and related equipment on the Mayan Towers.

76.    The Town has routinely reviewed and summarily approved all other requests by numerous wireless carriers for modifications of the Base Station at the Mayan Towers, including the modification, collocation, installation, replacement, and removal of transmission equipment.

77.    The Town has never subjected a prior application by other providers (including Omnipoint, AT&T, T-Mobile, Sprint, and Verizon) to the unproductive bureaucratic administrative tasks and hearings that the Town has imposed on DISH.

78.    Upon information, belief, a review of records produced by the Town, and records available at MyGovernmentOnline.org, the **Town has never denied a request** by any provider to modify, collocate, install, replace, or remove transmission equipment at the Mayan Towers prior to the instant denial of DISH's Application.

79.     Even during the pendency of DISH's Application, the Town continued to review and approve permits for other providers while subjecting DISH to unproductive bureaucratic administrative tasks and hearings.

80.     In particular, on or around June 6, 2022, the Town reviewed and approved a building permit to remove transmission equipment, including cabinets, antennas, radios, mounting brackets, H-frames, platforms, and power runs for Sprint (now owned by T-Mobile) (Building Permit #2022-117). 47 C.F.R. § 1.6100(b)(3)(defining an "eligible facilities request" as including the "removal of transmission equipment").

81.     The Town's treatment of DISH's Application and corresponding EFR Notice constitutes unreasonable discrimination among providers of functionally equivalent services.

82.     Further, the Town's denial of DISH's eligible facilities request constitutes unreasonable discrimination among providers of functionally equivalent services.

**Wherefore,** DISH respectfully requests that this Court:

    a.    Hold an expedited hearing;

    b.    Declare that Town violated the TCA by discriminating against DISH;

    c.    Declare the Town is mandated by federal law to approve the Application and issue all permits necessary to install all transmission equipment necessary to collocate DISH's transmission equipment and operate DISH's transmission equipment;

    d.    Enter an order granting the Application and all approvals necessary to allow construction and operation of the proposed colocation of DISH equipment at the Mayan Towers;

    e.    Issue an order deeming DISH's Application granted as a matter of law;

f.      Estopping the Town from imposing penalties or in any way preventing DISH from proceeding with DISH's Application to modify the long-Existing Base Station at the Mayan Towers; and

g.      Such further, other, or different relief as the Court deems appropriate under the circumstances.

**COUNT III**

**<u>Violation of Section 6409(a), 47 U.S.C. § 1455(a))</u>**

83.     DISH incorporates by reference the allegations set forth in Paragraphs 1-60 above as if set forth fully herein.

84.     The Town has failed to act on DISH's Application, the Resubmittal, and EFR Notice in the time required by federal law. 47 C.F.R. 1.6100(c)(2).

85.     DISH asserted in writing that DISH's Application was covered by Section 6409 in the EFR Notice on January 9, 2023.

86.     The Town did not notify DISH, <u>in writing</u>, that any part of the Application was incomplete within the time required by federal law (30 days of receipt of the EFR).  47 C.F.R. 1.6100(c)(3)(i).

87.     DISH did not acquiesce, agree to waive, or toll any statutory timeframes.

88.     Because the Town failed to grant or deny DISH's Application, DISH's Application is "deemed granted." 47 C.F.R. 1.6100(c)(4).

89.     Declaratory judgment should be granted to grant DISH as relief from uncertainty as to whether DISH can proceed under federal law with DISH's Application to modify the long-Existing Base Station at the Mayan Towers.

**Wherefore,** DISH respectfully requests that this Court:

a.      Hold an expedited hearing;

b.      Declare that Town violated Section 6409 by failing to grant or deny the Application within the time required by the statute;

c.      Declare the Town is mandated by Florida law to approve the Application and issue all permits necessary to install all transmission equipment necessary to collocate DISH's transmission equipment and operate DISH's transmission equipment;

d.      Enter an order granting the Application and all approvals necessary to allow the construction and operation of the proposed colocation of DISH's equipment at the Mayan Towers;

e.      Issue an order deeming DISH's Application granted as a matter of law;

f.      Estopping the Town from imposing penalties or in any way preventing DISH from proceeding with DISH's Application to modify the long-Existing Base Station at the Mayan Towers; and

g.      Such further, other, or different relief as the Court deems appropriate under the circumstances.

**COUNT IV**
**Violation of Section 365.172, Florida Statutes**

90.      DISH incorporates by reference the allegations set forth in Paragraphs 1-60 above as if set forth fully herein.

91.      This is an action for declaratory judgment pursuant to the provisions of Chapter 86, Florida Statutes, to determine the status of DISH's Application pursuant to Fla. Stat. § 365.1 72(12)(d)(2) and (3).

92.     DISH is entitled to a judicial determination that DISH's Application is deemed automatically approved as a matter of law, allowing it to proceed to construction because the Town failed to act on DISH's Application within the time required by § 365.172(12)(d).

93.     DISH submitted its Application on May 10, 2022.

94.     After receipt of the Application, the Town failed to notify DISH in writing that the Application was not complete in compliance with the local government's regulations within 20 business days. As a result, the Application was deemed complete and submitted as of May 10, 2022.

95.     The Town was required to grant or deny DISH's Application within 90 business days after the Application was deemed completed and submitted (i.e., the Town was required to act on DISH's Application on or before September 16, 2022).

96.     Because the Town failed to grant or deny DISH's Application, DISH's Application is "deemed automatically approved and the applicant [DISH] may proceed with placement of the facilities without interference or penalty." § 365.172(12)(d)(3)(b).

97.     DISH did not acquiesce or agree to waive any statutory timeframes.

98.     Declaratory judgment should be granted in order to afford relief from uncertainty under Fla. Stat.§ 365.172(12)(d) as to whether DISH can lawfully proceed with DISH's Application to modify the long-Existing Base Station at the Mayan Towers.

**Wherefore,** DISH respectfully requests that this Court:

a.      Hold an expedited hearing;

b.      Declare that Town violated Section 365.172, Florida Statutes, by failing to grant or deny the Application within the time required by the statute;

c.      Declare the Town is mandated by Florida law to approve the Application and issue all permits necessary to install all transmission equipment necessary to collocate DISH's transmission equipment and operate DISH's transmission equipment;

d.      Enter an order granting the Application and all approvals necessary to allow the construction and operation of the proposed rooftop colocation at the Mayan Towers;

e.      Issue an order deeming DISH's Application granted as a matter of law;

f.      Estopping the Town from imposing penalties or in any way preventing DISH from proceeding with DISH's Application to modify the long-Existing Base Station at the Mayan Towers; and

g.      Such further, other, or different relief as the Court deems appropriate under the circumstances.

**Dated: March 29, 2023.**

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By: */s/ Aaron C. Garnett*
    **Aaron C. Garnett**
    Florida Bar No. 0100232
    200 South Orange Avenue, Suite 2900
    Post Office Box 1549
    Orlando, Florida 32802-1549
    (Telephone) 407-422-6600
    agarnett@bakerdonelson.com

       *and*

**N. Andrew Rotenstreich**
Alabama Bar No. 1755E52N
*(motion for pro hac vice forthcoming)*
**W. Patton Hahn**
Alabama Bar No. 5864H36W
*(motion for pro hac vice forthcoming)*
1901 Sixth Avenue North, Suite 2600
Birmingham, AL 35203
Telephone: 205.328.0480
arotenstreich@bakerdonelson.com
phahn@bakerdonelson.com

*Attorneys for Plaintiff DISH Wireless L.L.C.*