# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:23-cv-80487-WPD

DISH WIRELESS L.L.C.,

Plaintiff,

v.

TOWN OF PALM BEACH SHORES, a
Florid Municipal Corporation,

Defendant.
_______________________________________/

**DECLARATION OF JOSH NICHOLS**
**UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746**

I, Josh Nichols, submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. My name is Josh Nichols. I have been the Zoning Official for the Town of Palm Beach Shores (the "Town") since 2016. I have a Master of Urban and Regional Planning from Florida Atlantic University and have worked as a planner for 22 years. I am a partner and principal planner in the West Palm Beach landscape architect and urban planning firm of Schmidt Nichols.

2. I have personal knowledge of the matters asserted herein.

3. As the Town's Zoning Official, I serve on the Town's Development Review Committee (DRC). I served on the DRC that in October and December 2022, reviewed DISH's application for a special exception to install antennas and equipment on Mayan Towers.

4. Telecommunications antennas are not a permitted use on the roof of Mayan Towers. Their installation requires a special exception, which requires a DRC review, a hearing before the Planning and Zoning Board, and a hearing before the Town Commission.

5. At the DRC meeting, I noticed inconsistencies in DISH's application as to the height of Mayan Towers. Since DISH's application for a special exception was to be decided by the Town Commission and the fact that the Mayan Towers is existing as constructed over 50 years ago, I did not explore with DISH the inconsistencies in Mayan Towers' height, or pursue questions as to the height of DISH's proposed antennas.

6. I am familiar with the aesthetic and concealment requirements that apply with respect to installing antennas on Mayan Towers. Section 62-61 of the Town Code provides that its purpose is to "minimize adverse visual effects of communications antennas through careful design, siting, landscape screening and innovative camouflaging techniques." The Code provides further in Section 62-64, that: "All applications for telecommunications antennas shall submit a site plan for a stealth facility in order to not detract from the community's aesthetic appearance. In any event, a telecommunication antenna shall be concealed or disguised within or upon the structures or buildings serving as the principal or accessory use for the property such that the antenna does not detract from the community's aesthetic appearance." This provision requires that buildings remain looking like buildings and that antennas installed on buildings be screened or installed and painted in such as a way as to not be noticeable on the building or negatively impact views and aesthetics.

7. If DISH's special exception had been approved by the Town Commission, DISH would need to apply for a site plan to be reviewed by DRC and ultimately by the Planning and Zoning Board, that would include an architectural and aesthetic review. As part of that review, I would explore whether DISH's proposed antennas satisfied the requirements to be concealed or disguised on Mayan Towers and whether its antennas would detract from the community's aesthetic appearance.

8. I am familiar with concealment efforts for such wireless antennas generally, having worked on other sites to install facilities in Palm Beach County, outside of Palm Beach Shores.

9. I have reviewed DISH's plans for installing antennas on Mayan Towers. I do not consider DISH's proposed antennas as presently designed to be consistent with the applicable concealment requirements. Other antennas on the building are installed generally against the building, not extending above the tallest portion of the building, and painted to match the building. That way, when residents look at the building, they see a building. Such antennas are not as noticeable on the building's exterior, and they do not detract from existing water views to the east and west of Mayan Towers or the aesthetics.

10. DISH has proposed three antennas, roughly 2' wide x 11' long, on the edge of Mayan Towers to extend several feet above the tallest roof top structure. DISH indicated in its application that it would paint its antennas to match the building's aesthetics to satisfy the concealment requirement. However, its antennas could not be painted to blend into the building since they would extend beyond the building. Residents looking at Mayan Towers would notice the antennas extending from the edge of the roof, which would detract from existing views and aesthetics; instead of looking at a building or water views, residents would see large antennas.

11. If DISH's antennas had been approved for the proposed height as a special exception, as part of site plan review, I would explore with DISH the possibility of screening its antennas. There are several ways to accomplish this without impacting the antennas' signal. For example, the antennas could be mounted more toward the center of the building, away from the edge where a screen could be installed and painted to match the building to block views of the antennas. That would look like part of the building, be less noticeable and would not detract from existing aesthetics and views.

12. The Town Commission explored screening methods with DISH at the special exception hearing, but DISH declined to modify its proposed installation.

13. I provide this Declaration freely and voluntarily, and without duress, coercion or any promise of benefit or compensation. If called upon to testify at any hearing or trial in this matter, my testimony would be the same as is set forth herein.

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

Executed on January 24, 2024.

Josh Nichols

:40162/2#52636291 v1